IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **AUSTIN INVESTMENT FUND, LLC,**<br>**RICOBENE LLC,**<br>**TAX MATTERS PARTNER,**<br><br>**Complainant,**<br><br>v.<br><br>**UNITED STATES OF AMERICA and the INTERNAL REVENUE SERVICE,**<br><br>**Defendants.** | Docket No. 06-844T |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR' MOTION FOR AN ORDER COMPELLING THE RETURN OF THE NOTICE OF THE FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT TO THE INTERNAL REVENUE SERVICE FOR REWRITING IN COMPLIANCE WITH THE ADMINISTRATIVE PROCEDURES ACT**

## FACTS

After years of investigation of Austin Investment Fund, LLC ("Austin") by the Internal Revenue Service ("IRS"), the IRS made a final adjudication under the Administrative Procedures Act ("APA") relating to the very complicated tax controversy for the tax year 2002 that is the subject of this action. The IRS took final agency action on or about September 12, 2006 by issuing a Notice of Final Partnership Administrative Adjustment ("FPAA") to Ricobene LLC, the tax matters partner ("TMP") of Austin.

On or about December 14, 2006, the TMP filed a "Complaint for Readjustment of Partnership Items Under Internal Revenue Code Section 6226" ("Complaint") in this Court to seek *de novo* judicial review of the above referenced adjudication by the IRS issued in form of a FPAA. This Complaint was amended on or about June 14, 2007.

On or about August 13, 2007, Bruce Elieff and Kathy Abrahamson ("Elieff" and "Abrahamson" respectively, collectively "Elieffs"), indirect partners of Austin through Bulldog Investment Fund, LLC, filed three separate motions on different grounds to intervene in this action. On or about September 14, 2007, the Elieffs were allowed to intervene.

## ARGUMENT

### I. THE INTERNAL REVENUE SERVICE, WHICH IS PART OF THE U.S. TREASURY DEPARTMENT, IS SUBJECT TO AND IS REQUIRED TO COMPLY WITH THE ADMINISTRATIVE PROCEDURES ACT.

The Department of the Treasury and its agency, the IRS, are covered by and must comply with all of the statutory requirements and procedures of the APA found in 5 U.S.C.[1] §551 et. seq.

The APA defines an "agency" as an "authority of the Government of the United States, whether or not it is within or subject to review by another agency." §551(1). The Department of the Treasury is an agency of the Executive Branch. §101. The IRS is the agency by which the Department of the Treasury supervises the imposition and collection of taxes. 26 C.F.R. §601.101(a).

### II. THE ISSUANCE OF THE FPAA IS AN ADJUDICATION UNDER THE APA.

Under the APA, the government is authorized to perform two basic functions: rulemaking and adjudication. Rulemaking is generally prospective, focused on policy, and is more legislative than judicial in nature. Regulations issued by an agency are a typical example of rulemaking.

An "adjudication," on the other hand, is the "agency process for the formulation of an order." §554(a). An order is defined in the negative. An order is any part of a final decision by an agency "in a matter other than rule making." §551(6). Any agency action that involves a

[1] All statutory references are to Title 5 of the United States Code unless otherwise noted.

final decision, other than rulemaking, therefore falls within the definition of an adjudication. Decisions by agencies to grant or deny a permit or license, to assess penalties for noncompliance of statutes or regulations, or even to hire or fire personnel are all adjudications. If an agency action does not involve a "final disposition," it is not an adjudication. Senate Judiciary Comm., The A.P.A. Legislative History, Sen.Doc. No. 248, 79th Cong., 2d Sess., at 14, 197, and 254 (1946).

Adjudication is the decisional process focused on resolving a matter of individual rights or duties. After an examination of the facts, the issues, and the law, facts are determined and interpretations of law are made as part of an adjudication. An adjudication also includes an examination of facts in light of a burden of proof which varies according to statute. Steadman v. S.E.C., 450 U.S. 91, 95 (1981). The proponent of a rule or order has the burden of proof and orders can only be issued "on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." Id. at 98.

Adjudications under the APA are either formal or informal. The distinction between formal and informal adjudication is dependant upon whether the statute requires that the hearing be on the record. §554(a). Formal adjudications are necessary when adjudication is required by statute to be determined on the record after opportunity for an agency hearing. §554(a). However, determination of when a formal adjudication is necessary does not rest on the presence or absence of the magical phrase "on the record." Absent congressional intent to the contrary, the type of adjudication depends on the substantive character of the proceedings involved. Marathon Oil Co. v. E.P.A., 564 F.2d 1253, 1263 (9th Cir. 1977). Formal agency adjudication includes

elements of a judicial trial. §§554-557. Adjudications not covered by §554(a) are informal agency adjudications covered by §555.

Whether the order results from a formal or informal adjudication, the final decision of an agency is considered a "final agency action." A final agency action occurs when an agency asserts its "final position on the factual circumstances." Final agency action marks the "consummation of the agency's decisionmaking process," and determines rights, obligations, or legal consequences. Alaska Dept. of Environmental Conservation v. E.P.A., 540 U.S. 461, 463 (2004), *quoting* Bennett v. Spear, 520 U.S. 154, 155 (1997).

IRS adjudications include the proposed imposition of taxes, interest, and penalties. The IRS is authorized to investigate "all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. ("IRC") §7601. The term "person" includes partnerships, associations, companies, and corporations. IRC §7701(a)(30). In an administrative investigation, the IRS has the authority to summons taxpayers, examine records and data, and take testimony under oath for purposes of enforcing the Internal Revenue Code ("IRC"). IRC §7602(a)-(b). Once the IRS has completed its investigation, the subject matter of the investigation is adjudicated and an order is issued. The issuance of a statutory notice of deficiency, or a notice of final partnership administrative adjustment, is the final agency action resulting from an adjudication under the APA.

## III. WHEN THE FPAA VIOLATES THE APA, THIS COURT IS REQUIRED TO REMAND THE FPAA TO THE IRS WITH INSTRUCTIONS THAT THE IRS REWRITE THE FPAA TO PROVIDE SUFFICIENT INFORMATION AND REASONS TO SHOW WHY AND HOW IT ARRIVED AT EACH BALD CONCLUSIONARY DETERMINATIONS IN THE FPAA.

In Burlington Truck Lines, Inc. v. United States 371 U.S. 156, 168 (1962), the U.S. Supreme Court held that the APA requires a government agency, as part of concluding a formal

or informal adjucation, to "make findings that support its decision and those findings must be supported by substantial evidence." The Court stated:

> *There are no findings and no analysis here to justify the choice made, no indication of the basis on which the Commission exercised its expert discretion*. We are not prepared to and *the Administrative Procedure Act will not permit us to accept such adjudicatory practice* . . . 'unless we make the requirements for administrative action strict and demanding, expertise, the strength of modern government, can become the monster which rules with no practical limits on its discretion. 'Congress did not purport to transfer its legislative power to the unbound discretion of the regulatory body . . . And for the courts to determine whether the agency has done so, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it. The agency must make findings that support its decision, and those findings must be supported by substantial evidence. (emphasis added). Id. at 167-168.

The above is even more applicable to the very complex administration of the tax law where the IRS uses its expertise in administering the tax laws. In Fisher v. Commissioner for Internal Revenue, 45 F.3d 396 (10th Cir. 1995), the Court recognized this reality. The Court held that the IRS, like any other government agency, is required to provide sufficient information and reasons to show why and how it arrived at its determinations. Id. at 396. As in Burlington, the Court stated that when the IRS conducts an adjudication, it must give sound reasons for determinations arising from the adjudication:

> It is not enough that [the Commissioner's] decision could have been, or even probably was, based on sound reasons. '*It is an elementary principle of administrative law that an administrative agency must provide reasons for its decisions*' . . . *The administrative adjudicator, by written opinion, [must] state findings of fact and reasons that support its decision. These findings and reasons must be sufficient to reflect a considered response to the evidence and contentions of the losing party and to allow for a thoughtful judicial review if one is sought*… By failing to rule specifically on the request for waiver and by failing to offer any reasons for her decision, the Commissioner failed to

> demonstrate that she had exercised her discretion and thereby abused that discretion. (emphasis added). Id. at 396.

The Court remedied these violations of the APA by voiding the Tax Court proceedings and instructing the Tax Court to remand the adjudication document back to the IRS to rewrite the final agency action decision document to provide information sufficient to support its adjucative determinations. Id. at 397.

The IRS has failed to provide any information and reasons to show why and how it arrived at each bald conclusionary determination in the FPAA. Elieff, through his representatives, requested to the IRS for sufficient information, that no penalties should be imposed, and that there should be no disallowance of claimed losses. See Declaration of Bruce Elieff in Support of this motion ("Elieff Decl.") ¶3, and Declaration of Edward Ord in Support of this motion ("Ord Decl.") ¶¶7-8, 11. It is imperative that the Court require the rewrite. This case, like Fisher, involves the exercise of the power to tax. The arbitrary unexplained exercise of the power to tax is what fomented the American Revolution and caused the adoption of the Fourth Amendment of the U.S. Constitution. G.M. Leasing v. United States, 429 U.S. 338, 355 n. 20 (1977), holding that the IRS cannot enter private property under any circumstances without complying with the Fourth Amendment.

## IV. THE IRS CANNOT REFUSE TO COMPLY WITH THE APA, ISSUE A FINAL AGENCY ACTION DEVOID OF SUFFICIENT INFORMATION AND REASONS AS TO WHY AND HOW THE IRS ARRIVED AT ITS BALD CONCLUSIONS, AND THEN FORCE THE TAXPAYER TO HAUL THE IRS INTO COURT TO DISCOVER THE INFORMATION AND RATIONALE BEHIND THE ADVERSE DETERMINATIONS IN THE ADJUDICATION DOCUMENT.

This argument involves the previously discussed Fisher case. The IRS attempted to avoid the rewrite remedy by suggesting that the taxpayer had obtained disclosure in Tax Court proceedings and ascertained the information and rationale via discovery. The Circuit Court held:

> Although the IRS attempted to justify the denial before the Tax Court, this effort was too little, too late. *The IRS cannot make taxpayers haul it into Tax Court to ascertain that it has ruled on a lawful request or to discover what the rationale for its decision is*. (emphasis added). Fisher at 397.

The Court clearly stated that the APA requires the information and rationale to be included at the time of the adjudication and issuance of the final agency action document. The Court said that "[i]t is an elementary principle of administrative law that an administrative agency must provide reasons for its decisions." Id. at 396. Thus, the IRS violated the APA by not including the information and explanations in the FPAA in the first place.

## V. THE FPAA IN THIS PROCEEDING IS DEVOID OF INFORMATION AND REASONS OF WHY AND HOW THE BALD CONCLUSIONARY ADJUDICATIVE DETERMINATIONS WERE MADE. THE FPAA IS A STACCATO OF BALD CONCLUSIONARY ADJUDICATIVE DETERMINATIONS THAT VIOLATE THE APA AND HINDER JUDICIAL ECONOMY.

The specific adjudications in the FPAA that do not comply with the APA include, but are not limited to, the following:

| **REFERENCE**[2] | **ADJUDICATION** |
|---|---|
| Item 5.b.1. | It is determined that Austin Investment Fund LLC[3]…was formed and availed of solely for purposes of tax avoidance... |
| Item 5.b.1. | …FUND artificially overstated the basis of alleged built-in loss assets[4] purported contributed to FUND by China Orient Asset Management Company[5] |
| Item 5.b.1. | The Transaction and/or the creation of FUND to engage in such Transaction was a sham, lacked economic substance, and was not engaged in for a legitimate business purpose. |
| Item 5.b.1. | …FUND was not created for the purpose of carrying on a business by partners or for the sharing of profits and losses from such activity. |
| Item 5.b.1.a.<br>Item 5.b.2.a. | …FUND is not recognized as a partnership for Federal income tax purpose… |
| Item 5.b.1.c.<br>Item 5.b.2.c. | …the claimed loss from the Transaction does not reflect a true economic loss of the partnership or any of its partners, for U.S. Federal tax purposes. |

[2] All references are to the attachment to Form 886. The attachment did not have any pagination.
[3] Referred to as "Fund" in the remainder of the attachment.
[4] Referred to as "distressed assets" in the remainder of the attachment.
[5] Referred to as China Orient in the remainder of the attachment.

| | |
|---|---|
| Item 5.b.2. | …FUND was a sham, lacked economic substance and was formed and availed of, in connection with the Transaction, with a principal purpose to substantially reduce the present value of its partners' aggregate Federal tax liabilities in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. |
| Item 5.b.3. | …FUND has failed to establish that the purported partnership incurred any loss or bad debt during the taxable year in question or that it is entitled to any deduction under any provision of the Internal Revenue Code. |
| Item 5.b.4. | It is determined that the claimed losses have not been shown to be the result of a transaction entered into for profit… |
| Item 5.b.5. | …FUND has failed to establish that it had any basis in the distressed assets which were purportedly contributed to it. |
| Item 5.b.5. | …it is determined that FUND has failed to establish that the contributed distressed assets were in fact contributed or, if contributed, had any value at the time they were contributed and were property within the meaning of Section 723. |
| Item 5.b.6. | [I]f any portion of the claimed loss is otherwise allowable, it is determined that any portion of the loss recognized on the sale or exchange of the distressed assets that results from, or otherwise relates to, the excess of basis over FMV of the distressed assets at the time such assets were contributed to FUND, should be allocated to China Orient under the authority of Section 482 of the Internal Revenue Code. |
| Item 5.b.7. | …if any portion of the claimed loss is otherwise allowable, it is determined that the with regard to any portion of the loss recognized on the sale or exchange of the distressed assets that results from, or otherwise relates to, the excess of basis over FMV of the distressed assets at the time such assets were contributed to FUND, the allocation of any of such loss to the US Investors is unreasonable, and that portion of such loss should be allocated to China Orient, in accordance with the authority of Section 1.704-(3)(a)8) and (10) of the Income Tax Regulations. |
| Item 5.b.8. | Alternatively, even if FUND is respected for Federal income tax purposes, any losses claimed by FUND were capital in nature, and were not ordinary losses. |
| Penalties Item 1 | …adjustments of partnership items of FUND are attributable to a tax shelter within the meaning of IRC §6662(d)(2)(C)(ii)... |
| Penalties Item 1 | …FUND and its members had, as significant purpose, the avoidance or evasion of federal income tax… |
| Penalties Item 1 | …they lacked substantial authority for the positions taken |
| Penalties Item 1 | …they did not have a reasonable belief that those positions were more likely than not the correct treatment of such items. |
| Penalties Item 2 | …all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) a substantial understatement, (2) a gross valuation misstatement, or (3) negligence or disregard of rules or regulations. |
| Penalties Item 3 | …FUND and its partners did not have reasonable cause and good faith for any of the resulting underpayments, or that any other exceptions to the accuracy-related penalty apply. |

None of the aforementioned bald conclusionary adjudicative determinations in the FPAA include any information or reasons as to how and why they were reached. The FPAA delivers these adjudications in the passive voice, with the phrase "it is determined" leading each of its adjudications with no information as to the basis upon which they were made. The phrase "it is determined" in the FPAA is an acknowledgment that behind these adjudications lie facts, analysis, and explanations. The phrase "it is determined" in the FPAA also demonstrates an IRS intent to keep the taxpayer in the dark. This behavior is precisely what the APA was intended to negate:

> [T]he administrative adjucator, by written opinion, [must] state findings of fact and reasons that support its decision. *These findings and reasons must be sufficient to reflect a considered response to the evidence and contentions of the losing party and to allow for a thoughtful judicial review if one is sought*. (emphasis added). Fisher at 397.

The Elieffs were denied an opportunity for a thoughtful judicial review if one is sought. The Elieffs have had to sue to try to find out. To date, the Elieffs are still trying to find out the factual basis of the IRS' determinations. Consequently, there can be no thoughtful judicial review at this time. It is important to note that the attached Statutory Notice of Deficiency in the Fisher case and the FPAA both lack any information or reasons as to their respective adjudications. See Ord Decl. ¶¶3-6, 8-11 and the attached Exhibit A.

The remand of the FPAA to the IRS will:

(1) Promote judicial economy as going forward will result in the proceedings being voided.

(2) Give the IRS more time to conclude the evolution of its positions and provide discovery. The IRS has told the Elieffs that its evolving position is an ongoing process which is preventing the IRS from providing full discovery.

(3) Allow the IRS the time it requested to locate its files, develop its privilege logs, and provide the required discovery.

(4) Require the IRS to include its evolved position and explanations in the new FPAA.

(5) Moot some outstanding discovery issues and save the time and resources of the parties and the Court.

**CONCLUSION**

The APA and the interests of judicial economy require the Court to remand the FPAA to the IRS with instructions to rewrite the FPAA to include sufficient information as to why and how the IRS arrived at its bald conclusionary adjudicatory determinations stated in the FPAA.

Dated September 16, 2008

Respectfully Submitted,

__/s/ E.O.C. Ord_____________
E.O.C. Ord
Ord & Norman
233 Sansome Street, Suite 1111
San Francisco, CA 94104
(415) 274-3800
Counsels for Elieff